CULPEPPER, Judge.
This is a workmen’s compensation case. The plaintiff, Lewis E. Carpenter, contends that although he was a partner he was also an employee of “Cloud Trucking Company” and that he was injured in the course of his employment by this partnership. The defendant, New Amsterdam Casualty Company, carried a workmen’s compensation insurance policy in the name of Vertie *758 Cloud, individually, the other partner, hut plaintiff seeks to reform the contract of insurance so as to cover the alleged partnership. After trial on the merits, the district judge refused to reform the insurance contract and hence denied plaintiff recovery on that ground. Plaintiff appeals.
An understanding of the issues requires that the facts be set forth in some detail. Mr. Carpenter was a skilled mechanic who also owned several business interests in Lafayette. His brother-in-law, Vertie Cloud, lived in Turkey Creek, Louisiana, and had, for several years, been engaged in hauling gravel and other trucking employments. During the latter part of 1958, Mr. Carpenter found an opportunity to buy some used trucks from Circle Drilling Company, by whom he was employed at the time. Mr. Carpenter testified he conceived the idea of forming a partnership with his brother-in-law, Vertie Cloud, to purchase these trucks and engage in a business of hauling gravel and oil field supplies and equipment. Apparently Mr. Cloud was impecunious, so Mr. Carpenter made all of the business arrangements. They borrowed $14,000 from the St. Landry Bank & Trust Company on an unsecured promissory note dated December 12, 1958 and signed by Mr. Cloud, Mr; Carpenter and a Mr. J. K. Salter. Of this amount $10,000 was used to purchase the trucks, which were titled in the name of Vertie Cloud individually. The remaining $4,000 was to be used for operating expense.
This was, at best, a very loose verbal partnership agreement. Carpenter and Cloud testified they were each to own a 50% interest and were to share equally the profits or loss. Cloud was to work full-time doing whatever was necessary to obtain and carry out hauling jobs and maintain the trucks. Carpenter had furnished his credit to the partnership and he was also to assist the partnership on a part-time basis, particularly by doing some of the light repair work on the trucks. Mr. Carpenter started and operated a used oil field equipment supply and rental business, under the name “Equipment Incorporated”, in Lafayette, as his principal occupation.
All partnership funds were deposited in and disbursed from an account in the name-of Vertie Cloud individually. His wife,, who worked for a gravel company during the day, kept at her home some very meager records of the partnership. Mr. Carpenter was not listed on the Social Security or Withholding Tax records, of the state or federal governments, as an employee of the partnership. Only three or four truck drivers were so listed.
According to the testimony of Carpenter and Cloud, they were to draw from the partnership funds, as available, whatever amounts the partners needed for living expenses. At the end of the year they were to settle up and share the profit or loss. The evidence shows that during the few months the partnership did business (it went broke in less than a year), Mr. Cloud actually drew various amounts for his personal account but there is a serious factual dispute as to whether Mr. Carpenter drew any sums for his personal living expenses. He drew several thousand dollars of partnership funds but the very meager records kept by Mr. Cloud’s wife showed that all sums drawn by Mr. Carpenter were either for “payment of loan” or for reimbursement of expenses, such as gas, oil, etc. Mr. Carpenter had paid off the $14,000 bank note by the end of March, 1959.
On the day Carpenter was injured, August 2, 1959, his corporation, Equipment Inc., was delivering a-bulldozer from Lafayette, Louisiana, to Waco, Texas, on one of the partnership trucks. Carpenter, assisting in the loading operation, had climbed on the dozer, which was- already on the trailer. The brakes of the dozer slipped and Carpenter fell to the ground, breaking his leg.
Pretermitting the very serious question as to whether the workmen’s compensation, policy issued by defendant must be reformed so as to show the partnership, rather than Vertie Cloud individually, as-the insured employer (on which issue the- *759 district judge decided this case adversely to the plaintiff), we think the evidence fails to show that Mr. Carpenter received any amount whatsoever from the partnership as wages such that he must be considered as an employee of the partnership.
Plaintiff relies on the case of Trappey v. Lumbermen’s Mutual Casualty Company, 229 La. 632, 86 So.2d 515 in which the injured claimant was working as the manager and supervisor of a beverage plant at the time of the accident. Shortly before, he had become a partner in the business, but he continued to work and to receive his regular salary as manager of the plant, in addition to his partnership share of the profits. The court held that under our Civil Law system, unlike the Common Law, a partnership is a legal entity separate from the individual members thereof. Therefore, the plaintiff, who was performing services for the partnership and receiving wages like all the other employees, must be considered as an employee of the partnership for purposes of the Workmen’s Compensation Act. The Trappey case was a departure from previous jurisprudence which held that a partner could not be both an employer and an employee at the same time within the intent of the Workmen’s Compensation Act. Dezendorf v. National Casualty Company, La.App., 171 So. 160; Harper v. Ragus, La.App., 62 So.2d 167.
Malone, Louisiana Workmen’s Compensation Law and Practice, 1951 Ed., 1962 Pocket Part, Sec. 71 at page 19 makes the following comment regarding the Trappey case:
“It is noteworthy that under the facts of the case Trappey received a definite wage separate and apart from his participating share in the earnings of the firm. The court does not indicate whether this was of decisive importance. There is authority for the proposition that an agreement to remunerate an employee in terms of a percentage of the employer’s profits does not operate to defeat a compensation claim. Furthermore, the legislative policy of allowing compensation to an independent contractor in Louisiana suggests by analogy that the fact that the remuneration takes the form of profit is not fatal to a compensation claim in this state.”
Despite Professor Malone’s comment quoted above, no Louisiana case has as yet extended the doctrine of the Trappey case to hold that a member of a partnership is covered by the Workmen’s Compensation Act where the only remuneration he receives is a partner’s share of the profits. The cited case of Stovall v. Solomon, La. App., 94 So.2d 551 (2nd Cir.App.1957) held that the plaintiff was not a partner or an employee of a partnership, but instead was an employee of the defendant individually. Plaintiff was allowed to recover workmen’s compensation on the basis of wages consisting of 50% of the net profits earned in the drilling of water wells, under an arrangement where the defendant owned all of the drilling equipment and the plaintiff did all of the actual drilling work. The Stovall case is not authority for the proposition that a working partner, receiving only a share in the partnership profit, if any, must be considered as a wage earning employee of the partnership, entitled to workmen’s compensation.
We note also the case of Meyers v. Southwest Region Conference Association of Seventh Day Adventists, 230 La. 310, 88 So.2d 381 in which plaintiff, a salaried minister of the defendant church corporation, was injured in an automobile accident during the course of his employment. One of defendant’s arguments was that plaintiff was not an employee. In disposing of this argument the Supreme Court stated as follows:
“We think our recent decision in Trappey v. Lumbermen’s Mutual Casualty Co., 229 La. 632, 86 So.2d 515 disposes of this contention. There, it was held that a partner in a commercial business was an employee *760 within the meaning of the Act. The rationale of that decision would apply a fortiori to the instant case where plaintiff was employed at a definite monthly salary and had placed his time and service at the call of a superior.”
It is our conclusion that a partner who is injured while doing hazardous work for the partnership is not covered by the Workmen’s Compensation Act unless he can show that he was an employee of the partnership, under a contract of employment, whereby he received wages or some other specific remuneration from the partnership in addition to his share of the profits as a partner. To hold otherwise would mean in effect that every partner who participates in the profits of the partnership is a wage earning employee of the partnership. We do not understand this to be the holding of the Trappey case, nor do we think it can be logically extended to reach .such a result. This very case shows one of the problems of such a holding would be the determination of wages for purposes of the Compensation Act. If the partnership loses money, as it did in this case, then how would you figure the wages ?
With this understanding of the law, let us examine the facts of the present case. The evidence is not clear as to whether the “living expenses” which each partner could draw, were to be in addition to their respective shares of profits when they settled up at the end of the year. Under our interpretation of the Trappey case, as set forth above, the living expenses would have to be wages, in addition to the partner’s share of profits in order for the Workmen’s Compensation Act to apply. However, even assuming the agreement was that Carpenter could draw living expenses in addition to his partner’s share of the profits, the evidence does not show he actually drew any amount whatsoever for living expenses.
Carpenter contends he had drawn $1,731 for living expenses during the few months before his injury and that this amount must be considered as his wages. The evidence does not support this contention. As set forth above, Mr. Carpenter had signed a note for $14,000, of which $10,000 was used to buy the trucks. This bank loan was made in December of 1958 and, as the evidence shows, was repaid by Mr. Carpenter, $9,000 on January 16, 1959 and $5,000 on March 31, 1959.
After the partnership started doing business, in about January of 1959, the records kept by Vertie Cloud’s wife at her home showed the only sums paid out of partnership funds to Mr. Carpenter or his wife were as follows:

*761 It is noted that the above records of the partnership kept by Mrs. Cloud did not show any of the sums paid to Mr. Carpenter as being salary for his living expense or even as his share of the partnership profits. These records showed all sums received by Carpenter as being to reimburse him for money he used to pay the bank loan, or for expense of gas, oil, telephone, etc.
In an effort to show that some of the above listed funds, drawn from the partnership account by Mr. Carpenter, were for salary, i. e., for Mr. Carpenter’s living expense, the plaintiff introduced into evidence certain deposit slips and bank statements of his own personal checking account, for the purpose of showing that a total of about $1,731, of the money which he received from the partnership, was actually used by him for personal living expense. Actually these deposit slips and bank statements do not show what Mr. Carpenter used the money for but show only the amounts deposited.
Under these circumstances, we think that even if we assume the agreement between Mr. Carpenter and the partnership was that he could draw as wages enough money for his living expense, in addition to his share of the profits, the evidence does not show that he actually drew any sums from the partnership funds for his living expense. Corroborating this conclusion is the fact that Mr. Carpenter had sufficient income from other sources to live on and also the fact that Carpenter was not listed as an employee on the Social Security or Withholding Tax forms.
Thus, it is our conclusion that Mr. Carpenter was not an employee of the partnership and that he received no wages for the services which he performed for the partnership. Actually, he didn’t even receive any profit as a partner because the partnership admittedly lost money.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.
TATE, J., dissents and assigns written reasons.